UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TRAVIS WADE DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:05CV205 TIA |
| | ) |
| DEPUTY BELL, et al., | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment. (Docket #21). The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

### **Facts**

In the Complaint, Plaintiff alleges that Defendants Sheriff Daniel Torres, Deputy Sean Bell, Deputy Michael Lang, Deputy Kirk Rose, Deputy Mason McNail, and Deputy K-9 dog Egore used excessive force during a traffic stop in violation of his Fourth Amendment and due process rights.[1] In their Motion for Summary Judgment, Defendants have attached a Statement of Uncontroverted Material Facts.

Plaintiff has failed to respond to the Defendants' motion even though the Court entered an Order on April 14, 2006, ordering Plaintiff to file a responsive pleading and apprising Plaintiff how his failure to comply with the directive may result in the action being dismissed without prejudice. Under Local Rule 7-4.01, "[a]ll matters set forth in the statement of the movant shall be deemed

---

[1] The Court construed Defendant Egore to be the deputy who is the dog's handler, Deputy Kirk Rose.

admitted for purposes of summary judgment unless specifically controverted by the opposing party."[2] Therefore, the Court sets forth the following facts as presented by the Defendants in this matter:

On June 22, 2004, Defendant Deputy Rose of the Lincoln County's Sheriff's Department, pursued a vehicle driven by Plaintiff after observing Plaintiff's failure to stop at a stop sign in Troy Missouri. (Rose Aff. at para. 2; Deft.s' Exh. A). After Deputy Rose activated the emergency siren lights to signal the vehicle to stop, the vehicle did not stop, and Deputy Rose pursued Plaintiff based on his traffic violation and an informant's information concerning Plaintiff's involvement in manufacturing of methamphetamine and possessing a semi-automatic handgun. (Rose Aff. at paras. 3-5; Deft.s' Exh. A; Deft.s' Exh. A - Use of Force Report). Plaintiff's vehicle reached a speed of 120 miles per hour during the pursuit starting in Lincoln County and ending in Pike County. (Rose Aff. at para. 6; Deft.s' Exh. A). Deputy Rose called for the assistance of other officers by notifying dispatch, including the Pike County Sheriff's Department, in apprehending Plaintiff. (Rose Aff. at para. 7; Deft.s' Exh. A). Defendants stopped the vehicle by deflating the left-side tires with road spikes. (Deft.s' Exh. A).

At the scene of the arrest, Plaintiff not only refused to cooperate with the officers, but he refused to exit his vehicle. (Rose Aff. at para. 8). Although Plaintiff refused to show his hands, Deputy Rose noticed that Plaintiff was holding a metal flashlight in his left hand. (Rose. Aff. at para. 9). Deputy Rose directed Plaintiff to drop the metal flashlight, but Plaintiff failed to cooperate. (Rose Aff. at para. 10). After Plaintiff failed to cooperate by not dropping the flashlight, Deputy Rose advised Plaintiff that he would release Igor, the patrol canine, if Plaintiff continued to disregard

---

[2]Inasmuch as Plaintiff completely failed to contest anything in the Defendants' statement of uncontroverted facts, he is deemed to have admitted every matter Defendants set forth in their statement. Local Rule 7-4.01.

his request of dropping the flashlight. (Rose Aff. at para. 11; Deft.s' Exh. A). Deputy Rose also warned Plaintiff of the consequences of being grabbed by the canine's mouth, if Plaintiff did not follow his verbal commands. (Rose Aff. at para. 11). Deputy Rose advised Plaintiff three times that if he did not drop the weapon, he would release Igor and "the canine will bite you." (Deft.s' Exh. A - Use of Force Report).

Without complying with Deputy Rose's request, Plaintiff exited the vehicle still holding the metal flashlight. (Rose Aff. at para. 12). Deputy Rose directed Igor to apprehend Plaintiff. (Rose Aff. at para. 13). Igor grabbed Plaintiff's left arm with his mouth, and Plaintiff hit Igor with his fist. (Rose Aff. at para. 14). After Plaintiff dropped the flashlight and fell to the ground, Deputy Rose commanded Igor to release Plaintiff, and Igor followed Deputy Rose's command. (Rose Aff. at paras. 15-16). Deputy Rose arrested Plaintiff for failing to yield to an emergency vehicle and for traffic violations. (Rose Aff. at para. 17; Deft.s' Exh. A). Following Deputy Rose's command, Igor searched the interior of the vehicle after identify odors of illegal controlled substances on the driver's door seam and alerted Deputy Rose to the ashtray. (Deft.s' Exh. A). Examination of the ashtray revealed the ashtray to be loose and not properly center to the console of the vehicle. (Deft.s' Exh. A). After removing the ashtray, Deputy Rose observed a small plastic bag containing a brown powder. (Deft.s' Exh. A).[3] After being read his Miranda rights, Plaintiff explained that he was traveling to Bowling Green to steal anhydrous ammonia. (Deft.s' Exh. A). Plaintiff admitted that he had been using methamphetamine, and he manufactured methamphetamine to support his habit. (Deft.s' Exh. A).

---

[3]Lab tests revealed the brown powder to be field-tested positive for the presence of methamphetamine. (Deft.s' Exh. A).

Plaintiff suffered minor abrasions to his left arm from Igor's bite and abrasions to his face from contact with the pavement after falling to the ground. (Rose Aff. at para. 18). At the arrest site, Defendants offered Plaintiff medical treatment, but Plaintiff refused any treatment. (Rose Aff. at para. 19). Defendants transported Plaintiff to the Lincoln County Sheriff's Department without further incident. (Rose Aff. at para. 20; Deft.s' Exh. A).

In the Lincoln County Sheriff's Department Use of Force Report, Deputy Rose noted that he used necessary force in effectuating Plaintiff's arrest in order to defend himself. (Deft.s' Exh. A - Use of Force Report). Deputy Rose noted that Plaintiff refused medical treatment after being injured, a dog bite to his left arm and abrasions to his face, after Plaintiff failed to follow verbal commands to drop the flashlight and heed verbal warnings regarding the use of the patrol canine. (Id.).

**Standard for Ruling on Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). See Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 322-23, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). The United States Supreme Court has noted that, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of

every action'." Celotex, 477 U.S. at 327 (1986) (quoting Fed. R. Civ. P. 1).

The initial burden of proof is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. Anderson, 477 U.S. at 249; Celotex, 477 U.S. at 324. "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e).

## Discussion

Defendants argue that the use of force was not excessive under the Fourth Amendment in that it was objectively reasonable under the particular circumstances. The undersigned agrees with Defendants and finds that summary judgment is appropriate.

The undersigned must analyze Plaintiff's claim that Defendants employed excessive force during his arrest under the Fourth Amendment standard of "objective reasonableness." The reasonableness of a particular use of force depends on the circumstances of each case, including "the

severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989). The undersigned's vantage point must be that of a reasonable officer on the scene, not the 20/20 vision of hindsight. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 396-97.

In the instant case, it is undisputed that Plaintiff drove dangerously at excessive speeds on public highways and ignored the emergency sirens and lights of Deputy Rose's patrol car, which are well-known signals to pull over and stop. Based on the information from the informant, Deputy Rose could reasonably suspect that Plaintiff was fleeing under the influence of drugs, and therefore posed a serious threat to public safety. Without question based on the record, Deputy Rose and Defendants had probable cause to stop Plaintiff's vehicle, and it was objectively reasonable for Deputy Rose to release the patrol canine and handcuff Plaintiff. See McGruder v. Heagwood, 197 F.3d 918, 920 (8th Cir. 1999); (police officer's use of police canine to bite and hold suspect not excessive use of force even though officer knew with certainty only that suspect had committed several minor traffic infractions).

Given the reasonableness of the arrest, the undersigned needs to determine whether Defendants used excessive force. When a suspect is passively resistant, somewhat more force may reasonably be required. The Graham Court focused on its reasonableness inquiry on three factors in particular: 1) whether the suspect is actively resisting arrest or attempting to evade arrest by flight; 2) whether the suspect poses an immediate threat to the safety of the officers or others; and 3) the

severity of the crime at issue. Graham, 490 U.S. at 396.

Applying the foregoing to the instant case, the Court finds that Plaintiff refused at first to exit the vehicle and refused to drop the flashlight after Deputy Rose directed him to do so three times and forewarned him that he would release the patrol canine if Plaintiff did not comply with his directives. When Plaintiff persisted in his refusal to drop the flashlight, it was reasonable for Deputy Rose to release the patrol canine. With regard to the second factor, Deputy Rose and the other Defendants could reasonably have concluded that Plaintiff posed a threat to the safety of drivers on the highway and residents of the neighborhood where the chase occurred. The third Graham factor, the severity of the crime at issue, further supports the objective reasonableness of Defendants' actions. At the time Deputy Rose released Igor, he knew with certainty that Plaintiff had committed several traffic violations, and he had information from an informant regarding Plaintiff's involvement in manufacturing methamphetamine and possessing a semi-automatic handgun. Accordingly, given the factual circumstances in the instant case and reviewing Defendants' actions without "the 20/20 vision of hindsight," the Court finds that the decision to use Igor to assist in Plaintiff's apprehension was objectively reasonable force as a matter of law. The Court notes that this is not a case where the officers are accused of siccing a patrol canine on a manifestly unarmed and compliant suspect. Accordingly, Defendants are entitled to summary judgment on all the claims set forth in Plaintiffs' complaint.

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Docket #21/filed on December 8, 2005) is granted.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

Dated this  22nd  day of May, 2006.

                                                  /s/ Terry I. Adelman                        
                                            UNITED STATES MAGISTRATE JUDGE